**In the United States District Court
for the District of Kansas**

———————

Case No. 21-cv-02163-TC

———————

LAURREL HUFFMAN, CRAIG REINMUTH, AND
DONNA REINMUTH-HUFFMAN,

*Plaintiffs*

v.

U.S. BANK NATIONAL ASSOCIATION AND VICKIE JACQUES,

*Defendants*

———————

**MEMORANDUM AND ORDER**

Plaintiffs Laurrel Huffman, Craig Reinmuth, and Donna Reinmuth-Huffman—collectively, the Huffmans—filed this suit in the District Court of Douglas County, Kansas, against U.S. Bank National Association and Vickie Jacques, its Kansas loan officer. Doc. 13. Plaintiffs assert several claims related to a mortgage loan. *Id.* U.S. Bank removed to federal court, Doc. 1, and moved to dismiss, Doc. 17. The Huffmans oppose that motion, Doc. 28, and move to remand to state court, alleging lack of subject matter jurisdiction, Doc. 19. For the following reasons, the Huffmans' motion to remand is denied,[1] and U.S. Bank's motion to dismiss is granted.

---

[1] Donna Huffman also filed a motion to stay (styled as a notice of medical leave), Doc. 44, to stay deadlines or appearances on or before December 19, 2021. That motion is denied as moot.

# I

## A

**1.** Federal courts have limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see* U.S. Const. art. III, § 2. For federal district courts, that means they may not exercise judicial power absent statutory authority to do so. *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) (quoting *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 552 (2005)). Consequently, there is an ongoing and independent obligation to ensure that subject-matter jurisdiction exists in every case, *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 438 (2011), requiring prompt dismissal or remand in any "proceeding[ ] in which it becomes apparent that jurisdiction is lacking." *Penteco Corp. v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991) (quoting *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)).

While there is no presumption concerning the existence or absence of jurisdiction, the party invoking the federal court's jurisdiction bears the burden of establishing by a preponderance of the evidence that jurisdiction is proper. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014); *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013). Congress has given federal courts jurisdiction to hear two general types of cases: those that "arise under" federal law, 28 U.S.C. § 1331, and those between completely diverse parties where the amount in controversy exceeds $75,000, 28 U.S.C. § 1332(a). *See also Home Depot*, 139 S. Ct. at 1746; *Allapattah Servs.*, 545 U.S. at 552.

For suits initially filed in state court, Congress permits removal to federal court only in certain limited situations. *See generally Lincoln Prop. Co. v. Roche*, 546 U.S. 71, 83 (2005). Specifically, a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction ... to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The party seeking removal must provide "actual proof of jurisdictional facts." *McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008). And any doubts concerning remand should be "resolved against federal jurisdiction." *Bd. of Cnty. Comm'nrs of Boulder Cnty. v. Suncor Energy*, 25 F.4th 1238, 1250 (10th Cir. 2022) (quoting *United States ex rel. King v. Hillcrest Health Ctr., Inc.*, 264 F.3d 1271, 1280 (10th Cir. 2001)).

**2.** To survive a motion to dismiss for failure to state a claim, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Tenth Circuit has summarized two "working principles" that underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, the Court ignores legal conclusions, labels, and any formulaic recitation of the elements of the cause of action. *Kan. Penn Gaming*, 656 F.3d at 1214. Second, the Court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts viewed in the light most favorable to the claimant must move the claim from conceivable to actually plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). The nature and complexity of the claims define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

Ordinarily, a motion to dismiss is decided on the basis of the pleadings alone. But "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citation and internal quotation marks omitted).

**B**

This is a dispute between three individual plaintiffs and two defendants. The three plaintiffs (collectively "the Huffmans") include

3

Laurrel Huffman, a citizen of Texas, Doc. 1 at ¶ 16, and Donna Reinmuth-Huffman and Craig Reinmuth, both citizens of Kansas. Doc. 1 at ¶ 15. Defendant U.S. Bank is a national banking association with its principal place of business in Ohio. Doc 1 at ¶ 18–19. And defendant Vickie Jacques is a citizen of Kansas. Doc. 1 at ¶ 20.

Laurrel, with the assistance of her parents, Craig and Donna, sought to purchase a home in Corpus Christi, Texas.[2] Doc. 13 at ¶ 8–10; *see* Doc. 18-1 at 5. Laurrel and Craig applied in Lawrence, Kansas for a mortgage from U.S. Bank and communicated with U.S. Bank's Kansas loan officer, Vickie Jacques. Doc 13 at ¶ 1–4, 8, 10, 11. Only Laurrel and Craig sought to be on the loan; Donna wished to remain off the loan. Doc. 13 at ¶ 11. On January 18, 2017, U.S. Bank issued Laurrel and Craig a written document, "Buyer Express Approval," agreeing to finance 95 percent of the purchase price. Doc. 13 at ¶ 12.

After signing a purchase contract with the home sellers, the Huffmans allege U.S. Bank made "continuing change[s] in [its] position," ignored the terms reached in the "Buyer Express Approval" by requiring Donna to be on the loan, and refused to honor the "written rate lock." Doc. 13 at ¶¶ 12–20, 50. Despite U.S. Bank's changes, the Huffmans finalized a loan with U.S. Bank on April 17, 2017, signing a Deed

---

[2] At the time this lawsuit was filed, Donna, a licensed Kansas attorney, represented herself and all other plaintiffs. After all relevant pleadings were submitted and oral argument occurred, Donna filed a notice of withdrawal as counsel of record for this case, Doc. 46, because an attorney disciplinary proceeding suspended her law license for two years. *In re Huffman*, 509 P.3d 1253 (Kan. 2022). Huffman seeks to continue pro se for herself. Regarding her co-plaintiffs, she writes that she "shall have the remaining Plaintiffs speak for themselves." Doc. 46 at 2. None of the other plaintiffs—her husband and her daughter—have filed any additional pleadings or hired counsel of their own. But there is no reason to believe that the pleadings failed to fully and adequately represent the Huffmans' interests when the pleadings were filed. As a result, Donna's current suspension does not alter resolution of this case.

4

of Trust and promissory note. *See* Doc. 13 at ¶ 12; Doc. 18-1 at 20[3]; Doc. 28 at 4–6. The Deed of Trust specified that "the law of the jurisdiction in which the Property is located" governs the loan servicing contract. Doc. 18-1 at § 16.

The Huffmans allege additional misconduct. They allege that U.S. Bank breached the terms of the mortgage by charging "uncontracted for fees," improperly processing partial payments through suspense accounting, and improperly calculating escrow. Doc. 13 at ¶¶ 24–31, 55–57. The Deed of Trust includes terms governing payment processing, escrow management, and "loan charges." Doc. 18-1 at §§ 1–3, 14.

The Huffmans filed this suit on January 8, 2021 in the District Court of Douglas County, Kansas, against U.S. Bank National Association and Vickie Jacques, its Kansas loan officer, asserting three claims related to a mortgage application and loan. Doc. 1-1. Although complete diversity was lacking, U.S. Bank removed this case to federal court based on the theory that Jacques had been fraudulently joined and should be ignored for purposes of diversity. Doc. 1 at ¶ 8. It subsequently moved to dismiss all claims. Doc. 8.

In response to the motion to dismiss, the Huffmans filed an amended complaint. Doc. 13. Once again, U.S. Bank filed a motion to dismiss. Doc. 17. In addition, the Huffmans moved to remand to state court, alleging lack of subject matter jurisdiction based on lack of diversity. Doc. 19.

## II

U.S. Bank properly removed to federal court because Jacques was fraudulently joined since there is no possible basis for recovery against Jacques individually. And the Huffmans' amended complaint fails to state a claim against U.S. Bank. As a result, the Huffmans' Motion for

---

[3] Doc. 18-1 is the Deed of Trust signed by the parties. Although the Deed of Trust was provided by U.S. Bank and is outside the pleadings, consideration of the Deed is proper for this Motion to Dismiss because it is referenced in the amended complaint, Doc. 13 at ¶ 21, central to the Huffmans' claim that U.S. Bank violated the terms of the Huffmans' home loan, and the Huffmans do not dispute its authenticity. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007); *see also* Doc. 28 at 4–6, 9, 12, 20 & n.6 (relying on the Deed to support their position).

Remand, Doc. 19, is denied and U.S. Bank's Motion to Dismiss, Doc. 17, is granted.

**A**

There is no possible basis for recovery against Jacques and, as a result, her presence in this lawsuit must be ignored for purposes of evaluating diversity of citizenship of the parties.[4] Doing so leads to the conclusion that jurisdiction exists under 28 U.S.C. § 1332 because the Huffmans seek more than $75,000 in relief and the remaining parties are completely diverse.

**1.** Jurisdiction under 28 U.S.C. § 1332 requires complete diversity and that the amount in controversy exceed $75,000. *See* 28 U.S.C. § 1332(a). In a removal case, a defendant may prove the amount in controversy for the purposes of diversity jurisdiction by "rely[ing] on an estimate of the potential damages from the allegations in the complaint." *McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008). Complete diversity means "no plaintiff may be a citizen of the same state as any defendant." *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015).

If complete diversity has been defeated only as a result of fraudulent joinder, Section 1332(a) may still be satisfied. *Dutcher v. Matheson*, 733 F.3d 980, 987 (10th Cir. 2013) (citing *Smoot v. Chicago, Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 881–82 (10th Cir. 1967)). Joinder is fraudulent if the removing party demonstrates either actual fraud in the pleading of jurisdictional facts or an inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *Id.* at 988. When examining questions of fraudulent joinder, a court may pierce the pleadings to determine if a cause of action exists. *Id.* A fraudulently joined party must be dismissed from the case without prejudice

---

[4] U.S. Bank asserts that federal question jurisdiction exists under 28 U.S.C. § 1331 because the Huffmans' KCPA claim is preempted by the National Banking Act and associated federal regulations and the court could exercise supplemental jurisdiction over the contract claims. Doc. 1 at ¶ 38–45. It is unclear that all of the Huffmans' KCPA claims are preempted by the National Banking Act. *See Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11–12 (2007). But it matters not because the parties are completely diverse. *See Long v. Halliday*, 768 F. App'x 811 (10th Cir. 2019) (affirming existence of diversity jurisdiction where a trustee was fraudulently joined in a suit against a mortgagee); *Brazell v. Waite*, 525 F. App'x 878, 883 (10th Cir. 2013) (same).

since a federal court lacks jurisdiction to reach the merits. *Albert v. Smith's Food & Drug Centers, Inc.*, 356 F.3d 1242, 1249 (10th Cir. 2004).

The party asserting fraudulent joinder has a heavy burden and "all factual and legal issues must be resolved in favor of the plaintiff." *Dutcher*, 733 F.3d at 988. If there is a possibility of recovery against the person whose joinder was questioned, remand is required. *See id.*

**2.** The amended complaint asserts two claims against Jacques. Doc. 13 at ¶¶ 8–23, 36–74; *see* Doc. 28 at 21. In Count I, Jacques is alleged to have breached a contract prior to the loan being signed. Doc. 13 at ¶¶ 8–23. In Count III, she is alleged to have violated the Kansas Consumer Protection Act, Kan. Stat. Ann. § 50–623 *et seq.* (KCPA). *Id.* at ¶¶ 36–74.

There is no possible basis for recovery against Jacques on either ground. As a result, she is dismissed without prejudice from this suit and ignored for purposes of determining diversity under 28 U.S.C. § 1332.

**a.** A federal court considering its jurisdiction over diversity suits applies the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Kansas courts follow "the doctrine of lex loci contractus, i.e., the law of the state where the contract is made governs." *In re K.M.H.*, 169 P.3d 1025, 1031–32 (Kan. 2007) (citation omitted). "A contract is made where the last act necessary for its formation occurs." *Id.*

The contract that the Huffmans say exists in Count I was allegedly formed in Kansas. Doc. 13 at ¶¶ 1, 40, 41, 42. The parties have not argued that any other state's law applies.[5] Thus, Kansas's law governs the Huffmans' claim for breach of contract against Jacques.

Kansas law recognizes five elements for a breach of contract claim. The party asserting such a claim must establish the existence of a contract between the parties, sufficient consideration, plaintiff's performance or willingness to perform in compliance with the contract, a defendant's breach of the contract, and damages to the plaintiff caused

---

[5] Even if Texas law applied, the result is the same because no contract had formed. *See S&S Emergency Training Solutions, Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018).

by the defendant's breach. *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013). In particular, a binding contract requires "a meeting of the minds" on all the essential terms. *Peters v. Desert Cattle Feeders, LLC*, 437 P.3d 976, 983 (Kan. 2019). Implied in every contract are the duties of good faith and fair dealing, such that one party will not interfere with the other party's ability to "receive the fruits of the contract." *Trear v. Chamberlain*, 425 P.3d 297, 304–05 (Kan. 2018) (internal citations and quotations omitted). The duty cannot be implied absent the existence of a contract, or on terms where the parties have not had a meeting of the minds. *See Peters*, 437 P.3d at 982–83.

The Huffmans do not allege any breach of contract claim against Jacques because she is not alleged to have been a party to any contract with any of the Huffmans. To the contrary, the Huffmans allege that at all times in her dealings with the Huffmans, Jacques was acting as U.S. Bank's loan officer—and the Huffmans knew it. Doc. 13 at ¶ 2, 4. They do not contend that Jacques was a party to any contract with them and/or U.S. Bank.

Kansas follows general agency principles such that "only the disclosed principal is liable on a contract executed by its agent with a third party; the agent of the disclosed principal is not liable on the contract." *Mackey v. Burke*, 751 F.2d 322 (10th Cir. 1984) (citing *State ex rel. Carlton v. Triplett*, 517 P.2d 136, 139 (Kan. 1973); *Kirkpatrick v. Seneca National Bank*, 515 P.2d 781, 785 (Kan. 1973) (stating that it is a "well-established principle of agency law" that the agent of a disclosed principle is not liable on a contract); *Service Iron Foundry, Inc. v. M.A. Bell Co.*, 588 P.2d 463, 470 (Kan. App. 1978) ("the general rule in Kansas" is that only the disclosed principal is liable)); *see also Beef Belt, LLC v. Burgess*, 451 P.3d 489 (Kan. Ct. App. 2019). Thus, even if these pre-loan items were contracts, only U.S. Bank could have been a party, because the amended complaint alleges Jacques was merely acting as U.S. Bank's disclosed agent in all her dealings with the Huffmans. *See* Doc. 13 at ¶ 2, 4. Accordingly, the Huffmans cannot maintain a breach of contract action against Jacques for her pre-origination actions.

The Huffmans' contrary arguments lack merit. For example, citing *McFeeters v. Renollet*, 500 P.2d 47, 50 (Kan. 1972), they contend that Kansas law permits the imposition of liability against an agent for their own torts, even if committed while acting in the scope of agency. Doc. 28 at 22. True enough. But that point of law is meaningless to this case because the Huffmans do not argue that Jacques acted tortiously. To the contrary, they assert only a breach of contract against her.

8

Additionally, the Huffmans allege that Jacques breached a contract and her implied duties of good faith and fair dealing to them when she engaged in "bait and switch" tactics by changing the required named borrowers, re-pulling credit scores, and changing loan rates, all to better her personal position through a "concealed bonus program." Doc. 13 at ¶¶ 4, 11–23. Even if true, a breach of contract claim against Jacques cannot stand because there are no allegations that Jacques and the Huffmans had "a meeting of the minds" on all the essential terms as required for a valid contract. *See Peters*, 437 P.3d at 983; *see also Lott v. First Fam. Fin. Servs., Inc.,* No. CIV.A. 2:02CV56PG, 2003 WL 21768024, at *3 (S.D. Miss. July 11, 2003) (applying similar standards and finding that loan officers were fraudulently joined since they were merely agents of the lender).

**b.** As for Count III, the Huffmans claim that Jacques violated the KCPA. Doc. 13 at ¶¶ 1, 40, 41, 42. But principles of statutory interpretation prevent the alleged KCPA violations from attaching to Jacques because she was covered by a statutory exemption at the time of the Huffmans' transaction.

To properly allege a KCPA violation pursuant to Section 50-626 or Section 50-627, the plaintiff must show that the alleged violator, here Jaques, was a "supplier" within the meaning of the statute. *See* Kan. Stat. Ann. §§ 50-624, 50-626, 50-627. At the time of the conduct at issue (prior to July 1, 2019), the KCPA defined "supplier" as

> "a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions, whether or not dealing directly with the consumer. Supplier does not include any bank, trust company or lending institution which is subject to state or federal regulation with regard to disposition of repossessed collateral by such bank, trust company or lending institution."

Kan. Stat. Ann. § 50-624(l) (2017). And, on the basis of that language, Kansas state and federal courts have repeatedly rejected assertions that the KCPA applies to national banking associations. *See generally Kalebaugh v. Cohen, McNeile & Pappas, P.C.*, 76 F. Supp.3d 1251, 1260 (D. Kan. 2015); *accord. Community First Nat'l Bank v. Nichols*, 443 P.3d 322, 329-331 (Kan. Ct. App. 2019) (recounting federal decisions and state court decisions). The Huffmans cite no authority to suggest that

a loan officer such as Jaques, who is employed by a national banking association subject to federal regulations, would qualify as a supplier when her employer would not.

The Huffmans argue that the 2019 amendment to the KCPA, which eliminated the bank exclusion, should apply to the 2017 transaction. Doc. 28 at 25–26. This argument is unavailing: the statute itself says the amendment only applies prospectively. 2019 Kan. Laws Ch. 66, § 17; *see also Schneider v. CitiMortgage, Inc.*, No. 5:13-CV-04094-HLT, 2019 WL 3731909, at *2 (D. Kan. Aug. 8, 2019) (holding same, noting that the exclusion about repossessed collateral was moved to the definition of "consumer transaction").

**3.** Even though Jaques is no longer in this suit, U.S. Bank must still establish that the remaining parties satisfy Section 1332's requirements. *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015). They have done so.

First, complete diversity exists. Donna and Craig are citizens of Kansas, Doc. 1 at ¶ 15, and Laurrel is a citizen of Texas, Doc. 1 at ¶ 16. U.S. Bank, as a national banking association, is a citizen of Ohio, where its principal place of business is located. Doc. 1 at ¶ 18–19; 28 U.S.C. § 1348; *Wachovia Bank v. Schmidt*, 546 U.S. 303, 951–52 (2006). Accordingly, there is complete diversity of citizenship among the parties. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, n.3 (10th Cir. 2014).

Second, the amended complaint seeks damages "in excess of $75,000.00." Doc. 13 at 15. This is sufficient to satisfy the jurisdictional amount. *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1216–17 (10th Cir. 2003) (holding plaintiff's allegations satisfied jurisdictional amount because it was not legally certain he would recover less on the claim).

**B**

The allegations in the Huffmans' amended complaint do not state a claim against U.S. Bank under governing contract law and the KCPA did not apply to U.S. Bank at the time of the transaction. As a result, U.S. Bank's Motion to Dismiss is granted.

**1.** In Count I, the Huffmans allege that U.S. Bank breached its contract and the implied duties of good faith and fair dealing with

respect to the origination of their loan. As discussed in examining Count I with respect to Jacques, *supra*, the claim fails because no contract existed prior to signing a loan.

Under Kansas law, a binding contract requires the parties' mutual assent such that there is "a meeting of the minds" on all essential terms. *Peters v. Desert Cattle Feeders, LLC*, 437 P.3d 976, 983 (Kan. 2019). Without mutual assent, there is no contract, and therefore, no implied duties of good faith and fair dealing. *Trear v. Chamberlain*, 425 P.3d 297, 304–05 (Kan. 2018) (internal citations and quotations omitted).

The Huffmans do not identify a contract that was breached. Instead, they allege that the "Buyer Express Approval" and "written rate lock" documents were contracts that U.S. Bank made and violated before the Huffmans signed the loan. Doc. 13 at ¶¶ 12, 14–15, 50; *see also* Doc. 28 at 15–16. But the Huffmans' own allegations—that U.S. Bank was making "continuing change[s] in [its] position"—confirm that these were not contracts but part of the parties' negotiations for a final loan that was ultimately signed by Plaintiffs. Doc. 13 at ¶ 12–20. Indeed, they allege that despite the "never-ending list of changes", the "loan was signed" anyway. Doc. 13 at ¶ 21. Since the parties had not agreed to identical terms, including who would be on the loan and at what rate it would be issued, they lacked mutual assent. Thus, the breach of contract claim fails because the Huffmans do not allege facts that establish that either the Buyer Express Approval or the rate lock were a binding contract with enforceable obligations between the parties. *See Peters*, 437 P.3d at 983. For the same reason, the claim for breach of the implied covenant of good faith and fair dealing also fails. *See Trear*, 425 P.3d at 304–05; *see also Kim Tang v. Bank of Blue Valley*, 318 P.3d 1019, 2014 WL 702404, *7 (Kan. Ct. App. 2014) (holding the covenant of good faith and fair dealing cannot be implied to exist for pre-contractual conduct that occurred before a home loan was signed).

**2.** In Count II, the Huffmans allege that U.S. Bank breached the loan contract and its implied duties of good faith and fair dealing by charging fees for phone-based support and wire payments, improperly "padding" the escrow account, and holding partial payments rather than posting them immediately so as to avoid applying payments to the principal. Doc. 13 at ¶¶ 24–31. That claim fails.

Unlike with Count I, Kansas choice-of-law principles require application of Texas substantive law to Count II of the Huffmans' amended complaint. Kansas courts recognize that parties' selection of

11

substantive law controls. *Brenner v. Oppenheimer & Co. Inc.*, 44 P.3d 364, 375 (Kan. 2002). In the Deed of Trust, the parties' agreement declares that the governing law is "the law of the jurisdiction in which the Property is located." Doc. 18-1 at ¶ 16. As noted, the property at issue was in Corpus Christi, Texas. Doc. 18-1 at 5.

To state a breach of contract claim under Texas law, the plaintiff must allege four elements. Those are formation of a valid contract, performance by the plaintiff, breach by the defendant, and resulting damages. *S&S Emergency Training Solutions, Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). "A breach of contract can only occur if a party fails to perform an act that it has expressly or impliedly promised to perform." *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 770 (Tex. App. 2005); *Am. Int'l Specialty Lines Ins. Co. v. Res-Care Inc.*, 529 F.3d 649, 666 (5th Cir. 2008); *see also Guajardo v. JP Morgan Chase Bank, N.A.*, 605 F. App'x 240, 244 (5th Cir. 2015) (requiring that a borrower-plaintiff specifically identify the provision allegedly breached to state a claim). Texas law does not recognize an implied covenant of good faith and fair dealing in contracts. *English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983); *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 490 (Tex. 2019) ("[A]bsent a special relationship, parties to a contract have no duty to act in good faith.").

The Huffmans' amended complaint does not identify any contractual provision, express or implied, that U.S. Bank breached. And it fails to state more than general allegations of wrongdoing on U.S. Bank's part. In fact, each allegation of breach appears to describe conduct specifically authorized by the Deed of Trust. First, the Huffmans allege that U.S. Bank breached by charging "uncontracted for fees." Doc. 13 at ¶ 24. But the contract's express terms state that the bank may charge fees so long as they are not "expressly prohibited." Doc. 18-1 at 13–14. The Huffmans have not identified any provision that expressly prohibited U.S. Bank's alleged conduct. Second, the Huffmans allege that U.S. Bank improperly processed their partial payments and escrow. Doc. 13 at ¶¶ 24–31. This argument also fails to state a plausible breach because the Deed of Trust authorizes U.S. Bank to process partial payments and escrow exactly as the Huffmans allege the Bank did. *See* Doc. 18-1 at §§ 1–3. Since the Huffmans fail to identify to any term that would give rise to a breach of contract claim, Count II must be dismissed. *See Am. Int'l Specialty Lines*, 529 F.3d at 666.

**3.** In Count III, the Huffmans allege that U.S. Bank's conduct with respect to their loan violated the KCPA. Doc. 13 at ¶¶ 37–74. That claim fails.

The Huffmans allege that U.S. Bank is liable for violations of the KCPA because it was a supplier. Doc.13 at ¶ 37. But, as noted *supra*, the KCPA defined "supplier" to expressly exclude "any bank, trust company or lending institution which is subject to state or federal regulation with regard to disposition of repossessed collateral by such bank, trust company or lending institution." Kan. Stat. Ann. § 50-624(l) (2017). U.S. Bank is subject to federal regulation, *see* Doc. 18 at 21, and therefore U.S. Bank was covered by the express exclusion. *Schneider v. U.S. Bank, N.A.*, No. 20-2162-JAR-GEB, 2020 WL 4673159, at *7 (D. Kan. Aug. 12, 2020).

As noted *supra*, the Huffmans argue that a 2019 amendment, which eliminated the exemption for banks under the definition of "supplier," should apply to the 2017 transaction. Doc. 28 at 25–26. But that contention is contrary to the law in Kansas, which applies the amendment prospectively only. 2019 Kan. Laws Ch. 66, § 17. Thus, the definition of "supplier" in effect at the time of the 2017 transaction controls. *Schneider v. CitiMortgage, Inc.*, No. 5:13-CV-04094-HLT, 2019 WL 3731909, at *2 (D. Kan. Aug. 8, 2019); *see also Community First National Bank v. Nichols*, 443 P.3d 322 (Kan. Ct. App. 2019). Other courts to reach this particular issue are in accord. *Schneider v. U.S. Bank*, 2020 WL 4673159, at *7 (D. Kan. Aug. 12, 2020); *Jones v. Fay Servicing, LLC*, No. 19-01124-EFM, 2020 WL 569771, at *6 (D. Kan. Feb. 5, 2020). The Huffmans' KCPA claim is precluded.

### III

For the foregoing reasons, Plaintiffs' Motion to Remand, Doc. 19, is DENIED, Defendant Vickie Jacques is dismissed, and Defendant's Motion to Dismiss, Doc. 17, is GRANTED.

It is so ordered.

Date: September 29, 2023          s/ Toby Crouse
                                  Toby Crouse
                                  United States District Judge